David H. Boren, Esq. SBN 186316
   *dboren@rlscf.com*
Gregory N. Weisman, Esq., SBN 172248
   *gweisman@rlscf.com*
RITHOLZ LEVY SANDERS CHIDEKEL & FIELDS LLP
421 South Beverly Drive, 8th Floor
Beverly Hills, CA  90212
Bus:  (310) 282-9449
Fax:  (310) 282-2549

Attorneys for Plaintiff
DIAMOND SUPPLY COMPANY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIAMOND SUPPLY COMPANY, a California corporation,<br><br>            Plaintiff,<br><br>  vs.<br><br>FOREVER 21, INC., a Delaware corporation and DOES 1 -10 inclusive,<br><br>            Defendants.<br>_____ | Case No.: CV13-06440 RSWL (JCx)<br><br>**OPPOSITION BY PLAINTIFF DIAMOND SUPPLY COMPANY TO DEFENDANT FOREVER 21, INC.'S MOTION FOR LEAVE TO AMEND TO ADD A COUNTERCLAIM FOR CANCELLATION OF REGISTERED TRADEMARK AND FOR DECLARATORY RELIEF**<br><br>Date:  June 10, 2014<br>Time:  10:00 a.m.<br>Place:  Courtroom 21<br><br>Complaint Filed: September 3, 2013<br>Trial Date:         January 27, 2015 |

0019379.5

Plaintiff Diamond Supply Company ("Diamond") respectfully submits this opposition to Defendant Forever 21, Inc.'s ("Forever 21") motion for leave to amend to amend its answer and file a counterclaim to cancel Diamond's registered trademark in the Brilliant Logo and for declaratory relief as follows:

## I.   INTRODUCTION

Over eight (8) months after Diamond filed this lawsuit (Sept. 3, 2013), and over six (6) months after Forever 21 filed its answer in this action (Nov. 14, 2013), Forever 21 seeks to assert a counterclaim that it could have asserted (factually) and <u>was compelled</u> to assert (legally) when it filed its answer.

Forever 21's defensive theory since the inception of this lawsuit has been that diamond symbols prominently appearing on its apparel products which are virtually identical, and as such "likely to cause confusion" with Diamond's registered mark for the Brilliant Logo and common law trademark for the Rock Logo (defined below) are "common diamond symbols," and that because such logos are on the garment or all over the garment (rather than on its label or hangtag), they are used merely "ornamentally" and therefore legally immune from a claim of infringement.

This is a legal argument (unsupported by law, but that's not at issue yet), not a factual one, and nothing that Forever 21 has allegedly "discovered" since November 2013 has altered the position that they were required to bring it at the time of filing its answer.  So-called "recent" discovery of other apparel firms using a diamond on apparel allegedly similar to the Brilliant Logo is just a "smoke screen" co-opted to attempt to assert this very late counterclaim in an untimely fashion.

Moreover, Forever 21 completely neglects Rule 13(a) of the Federal Rules of Civil Procedure ("FRCP"), which is the proper standard to use in analyzing whether it can assert a counterclaim at this late stage of the litigation.  The relevant inquiry is whether Forever 21's proposed counterclaim was ripe and needed to be asserted when Forever 21 filed its initial answer in November 2013.  In making such analysis, courts

ask whether the "operative facts" of the claims have a "logical relationship." As Forever 21 seeks to cancel the principal trademark registration that Diamond has sued upon, there could not be a more "logical relationship" and, therefore, Forever 21 was required to file this counterclaim at the time it filed its initial answer.

Moreover, even under a FRCP 15(a) standard, Forever 21 has unduly delayed in filing its claim, and such a claim filed at this late juncture in the action will cause undue prejudice, would be in bad faith and would be futile as Diamond's mark is presumed to be a strong mark and therefore inherently distinctive or, in the alternative, has clearly acquired requisite distinctiveness.

Forever 21's motion for leave to amend to add a counterclaim should be denied.

However, to the extent that Forever 21's motion is granted, Diamond must naturally request that the Court extend the discovery deadline as well as all other dates in this action due to Forever 21's late filing of this counterclaim and the new necessity for Diamond to defend one of its principal business assets, which has all of a sudden been put at issue here.

## II. STATEMENT OF FACTS

On Sept. 3, 2013, Diamond filed its Complaint in this matter against Forever 21 for claims of trademark infringement, unfair competition and false designation of origin, among other claims (See Docket No. 1). On Nov. 14, 2013, Forever 21 filed its Answer to the Complaint without asserting a counterclaim. (See Docket No. 10).[1]

Diamond is a clothing and skateboarding hardware company founded in 1998. Over the past 15 years, through shrewd promotion and extensive marketing, Diamond has become one of the most recognized brands in the streetwear and action sports

---

[1] Interestingly, when Diamond filed its lawsuit, it was appropriately seeking to protect the Diamond Marks (which is its primary business), and placed at issue less than a dozen of Forever 21's tens of thousands of apparel items. Forever 21's new approach here is to try and destroy Diamond's entire brand.

0019379.5

fields for clothing, accessories and skate hardware gear.  Since at least as early as January 1, 1999, Diamond has used the DIAMOND SUPPLY CO. (words only) trademark (the "Diamond Name") and certain stylized logos to identify itself as the sole source of its goods.  The most prolific of Diamond's stylized trademarks is the "Brilliant" logo – which is a detailed picture of an intricately cut diamond (pictured below) oriented in side view with at least 27 independent lines (the "Brilliant Logo"). Diamond obtained a US registration for the Brilliant Logo on July 23, 2013 in International Class 25 (USPTO Reg. No. 4372413), memorializing a Date of First Use in Commerce of December 31, 1998, or over 15 years of continuous use in commerce.

*[Brilliant Logo]:*



More recently, Diamond has introduced another stylized variant of its diamond logo (the so-called "Rock" logo) – which is also a picture of a cut diamond (pictured below) oriented in side view and in the same outline as the Brilliant Logo, but with fewer lines and, therefore, visual depth (the "Rock Logo").

*[Rock Logo variant]:*



On November 14, 2011, Diamond filed a trademark application for registration of the Rock Logo (USPTO Serial No. 85472029), which application remains pending. Diamond has made use in commerce of such Rock Logo.  The Diamond Name, Brilliant Logo and Rock Logo are sometimes herein collectively referred to as the "Diamond Marks."

In addition to being the owner of federal trademark registrations for the Diamond Name and the Brilliant Logo in International Class 25 (and others), the

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO AMEND

Diamond Marks have become very well-known over this time period and have been associated with Diamond by the consuming public since at least January 1, 1999.

Diamond is one of the best-selling and hottest brands in "streetwear" and is a top selling brand at numerous mall retailers, including PacSun and Zumiez, among others, and at times, the Number 1 selling brand.

Diamond has worked tirelessly to advertise and promote the Diamond brand in connection with its apparel, footwear, and accessories bearing the Diamond Marks. Diamond has spent substantial sums on advertising, marketing and promoting the Diamond Marks, including high profile sponsorships with the world's biggest skateboarding athletes, freeway billboards all over town and collaborations with companies such as Nike and the Rob Dyrdek launched "Street League" skateboarding events, televised nationally and internationally. Nick Tershay, the CEO of Diamond, has about 654,000 followers on Facebook and 428,000 followers on Instagram.

Diamond has grossed over $150,000,000 in sales in its young existence, much of it recently, as its fame and consumer awareness have escalated.

Due to Diamond's extensive and continuous efforts to advertise, market and promote the Diamond Marks, consumers recognize the Diamond Marks as singularly associated with Diamond as the sole source and indication of origin. Diamond has established goodwill and exclusive rights in and to the Diamond Marks.

As is very common with other hot brands or movements, Diamond discovered that Forever 21 has been infringing upon the Diamond Marks by using a diamond design deliberately selected to adorn Forever 21 garments in a manner likely to capitalize on the goodwill created by Diamond in its marks and is likely to cause confusion, to cause mistake and/or to deceive customers and potential customers of the parties as between Diamond and Forever 21.

Diamond has been damaged and continues to be damaged by Forever 21's unauthorized use of a diamond design, diamond device and the word DIAMOND on Forever 21's apparel and other goods and services which are sold and advertised for

sale to the public which is confusingly similar to the Diamond Marks and should be restrained by this Court.

## III. LEGAL ARGUMENT

### A. FRCP 13(a) is the Proper Legal Standard to Determine Whether Forever 21's Counterclaim is Proper at this Stage of the Action

Forever 21's motion does not address FRCP 13(a). FRCP 13(a) states "a pleading must state as a counterclaim any claim that—*at the time of its service*—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction."

In *Int'l Controls & Measurements Corp. v. Honeywell*, 2013 U.S. Dist. LEXIS 127960 at *17 fn. 9 (N.D. NY 2013), the court held that under FRCP 13(a), "a pleading **must state any compulsory counterclaim that is ripe at the pleading's service**." [Emphasis added.] Courts making this determination ask whether the "operative facts" of the claims are "logically connected." *See Montana v. Goldin*, 394 F.3d 1189, 1196 (9th Cir. 2005) (a "logical relationship exists when the counterclaim arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims...").

The Ninth Circuit has held that a cause of action for **declaratory judgment of non-infringement is a compulsory counterclaim** to a plaintiff's action for trademark infringement, unfair competition and dilution. See *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 625 fn. 5 (9th Cir. 1991). See also *Polymer Industries Prods. Co. v. Bridgestone/Firestone, Inc.*, 211 F.R.D. 312, 317 (N.D. Ohio 2002) (holding a claim for infringement is a compulsory counterclaim in a suit for declaratory judgment of non-infringement since the two claims involve the same issues of law and fact and the same evidence); *Crossroads Partners v. Utah Crossing,*

*Inc.*, 1999 U.S. App. LEXIS 22721 at *15 (9th Cir. 1999) (holding defendant waived its right to assert a counterclaim because it was compulsory and not timely filed).

Forever 21 was required to file this counterclaim at the time it filed its answer because the counterclaim to cancel Diamond's trademark registration in the Brilliant Logo "arises out of the transaction or occurrence" that is the subject matter of [Diamond's] claim (namely trademark infringement) and, therefore, has a "logical relationship" to Diamond's claims against Forever 21.

Forever 21 has argued since appearing in this action that the Brilliant Logo and Rock Logo are just "common pre-existing [diamond] symbols". Attached hereto as Exhibit "1" to the Declaration of David H. Boren ("Boren Decl.") is the Joint Rule 26(f) Report, filed back in January, in which Forever 21 posits whether its purported "non-trademark ornamental use of common pre-existing [diamond] symbols is capable of causing consumer confusion as to source of origin of the goods."[2] By stating the Brilliant Logo and Rock Logo are merely "common pre-existing symbols," Forever 21 was well aware of this argument and was required to have asserted this counterclaim when it filed its initial answer. Moreover, if the strength of plaintiff's mark was at issue (which Forever 21 alleges all of a sudden is merely a "common diamond symbol" incapable of protection), Forever 21 absolutely knew this purported common diamond symbol existed in the marketplace prior to filing its answer to the Complaint.[3]

When a plaintiff files a trademark infringement claim, defendant is compelled to file a counterclaim when it files its answer when the counterclaim is **ripe** to be filed or otherwise waives its right to do so. Forever 21 has relinquished this right.

---

[2] Of course, Diamond contends Forever 21's use of diamonds virtually identical or substantially similar to the Brilliant Logo and Rock Logo are likely to cause confusion and constitute trademark infringement.

[3] Moreover, Diamond has already produced evidence of "actual confusion" between its products containing the Brilliant Logo and the goods sold by Forever 21 (which is highly persuasive in any action for trademark infringement). See Exhibit "2" to the Boren Decl.

### B. Even Under FRCP 15(a), Forever 21 Has Unduly Delayed in Filing This Counterclaim Which Has Caused Prejudice to Diamond

If Forever 21 can somehow demonstrate its compulsory counterclaim was not ripe at the time it filed its initial answer, then and only then does the Court look to FRCP 15(a). Deciding whether to grant leave to amend is within the court's discretion, and a court may deny leave due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Leadsinger v. BMG Music Publishing*, 512 F.3d 522 (9th Cir. 2008) (denying leave to amend where it would be futile).

#### 1. Forever 21 Unduly Delayed in Filing this Counterclaim and It Would be Prejudicial to Diamond if Forever 21 is Allowed to File This Claim at this Late Juncture of the Litigation

In analyzing whether a party has unduly delayed in filing its counterclaim, a court determines "whether the moving party knew or should have known the facts and theories raised… in the [original] pleading." *AmerisourceBergen Corp. v. Dialysist West*, 465 F.3d 946, 953 (9th Cir. 2006), citing *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990).

In *Amerisource*, fifteen months passed between the time Amerisource discovered it had a claim and its filing of a motion for leave to amend. *Id.* at 953. Moreover, even though there were eight months of discovery remaining, the parties would have to incur "high, additional litigation costs" that could have been avoided had Amerisource set forth its theory (which it had known about for a long time) in its original complaint or reply and the Court denied the motion. *Id.* Further, in *Morongo Bank of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990), the Ninth Circuit denied leave to amend where Plaintiff introduced a new legal theory well into litigation on the grounds of undue delay and prejudice. In *Jackson*, the court denied

leave to amend a fraud claim where plaintiff had facts prior to first amendment to complaint and amendment was dilatory and prejudicial. *Jackson*, supra.

The same situation applies here. Forever 21's contention it just discovered other diamonds which appear to be similar to Diamond's Brilliant Logo rings hollow. Forever 21's theory is that merely using common pre-existing diamond symbols on its apparel is "non-trademark ornamental use" (with which Diamond disagrees), Forever 21 did not have to do any discovery before filing this counterclaim.

Moreover, as set forth in *AmerisourceBergen* above, an attempt to file a counterclaim 8 months before discovery cut-off was considered to be prejudicial to the opposing party. In this instance, the discovery cut-off is in <u>September 2014</u>, which is less than 4 months away. When you combine this with the fact that the counterclaim was "ripe" at the time Forever 21 filed its initial answer, Forever 21 should be barred from asserting this counterclaim at this late date.

### 2. **Allowing Forever 21 to Amend Its Pleading would be Futile**

An amendment is "futile" if it is subject to dismissal. *Klamath Lake Pharmaceutical Assoc. v. Klamath Medical Service Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983) (denying motion for leave to amend where amendment would be futile). Forever 21's substantive posture is that (i) its use of diamond symbols on garments was merely "ornamental" and as such, non-infringing, and (ii) that a purportedly "common symbol" such as Diamond's stylized Brilliant and Rock logos cannot legally function as a trademark under law and cannot function as a source identifier. As set forth above, Diamond has a registered trademark in the Brilliant Logo and, as such, Diamond's trademark rights in the Brilliant Logo are presumed to be distinctive. *Zobmondo Entm't, LLC v. Falls Media, LLC,* 602 F.3d 1108, 1113, 1115 (9th Cir. 2010) ("Federal registration provides *prima facie* evidence of the mark's validity and entitles the plaintiff to a **strong presumption** that the mark is a protectable mark" and that the mark is distinctive "or else they would not have registered it").

8

Even if Forever 21 can prevail in rebutting the presumption of validity, by demonstration of the "sufficient and undisputed facts" required to do so, *see Id.* at 1115; *Tie Tech, Inc. v. Kinedyne Corp.,* 296 F.3d 778, 783 (9th Cir. 2002), and somehow prove its contention that the Brilliant Logo is not inherently distinctive, the Brilliant Logo will nevertheless remain eligible for federal trademark registration based on a showing of "acquired distinctiveness." *See, e.g. Wal-Mart Stores v. Samara Bros.,* 529 U.S. 205, 211 (2000).  In such connection, Diamond's mark is hardly a "basic shape" like a circle or square.  The Brilliant Logo features a side view of a diamond gemstone in profile, with not less than twenty-seven (27) individual line segments making up the artwork of the logo.  The below is the "basic" shape colloquially referred to as a diamond.



That is not the mark at issue here.  This is the registered mark that Forever 21 seeks to cancel:



*"Brilliant Logo"*

While a common pre-existing symbol (like the basic diamond shape in black above) may not be entitled to registration absent secondary meaning, a side view of a diamond gemstone in profile above is far from a common symbol.  This is not a 5-pointed star symbol, or a crossbones design or even a checkerboard pattern on shoes.  Thus, whether by virtue of the Brilliant Logo's inherent distinctiveness, or in the alternative by a showing of its acquired distinctiveness, Forever 21's attempt to seek cancellation of Diamond's trademark registration is just plainly futile.

As Forever 21 has itself shown in Exhibit "A" of its proposed answer, Forever 21 has utilized exact replicas or nearly identical facsimiles of Diamond's protected

Brilliant Logo and Rock Logo in commerce, without Diamond's authorization, thereby illicitly trading off Diamond's staggering popularity among the youth sportswear demographic coveted by Forever 21. That is the claim at issue here, and Forever 21 has every right to defend itself from the claims made in the complaint.

Finally, Section 43(a) of the Lanham Act clearly requires only "***use in commerce*** [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark," (emphasis added) as a prerequisite to the likelihood of confusion analysis; no particular sort of "use in commerce," such as use in commerce as a source identifier, is required. 15 U.S.C. §1114 (1)(a); *Kelly-Brown v. Winfrey,* 717 F.3d 295, 305-307 (2d Cir. 2013). Diamond will easily meet this requirement. "Use in commerce" occurred here merely when a reproduction of Diamond's trademark was affixed to Forever 21's infringing items in connection with the sale thereof. *See* 15 U.S.C. § 1127. The Ninth Circuit expressly recognizes "use in commerce" as sufficient to establish a *prima facie* case of trademark infringement, even where the alleged infringer's usage was not in a trademark capacity. *See e.g. Network Automation, Inc. v. Advanced Sys. Concepts,* 638 F.3d 1137, 1144-1145 (9th Cir. 2011). Here, the public is likely to be confused by virtue of seeing the Brilliant Logo prominently adorned right on the front of, or all over, Forever 21 products, and if it disagrees with Diamond's allegations, it will get its day in court to defend itself.

Thus, Forever 21's attempt to file a counterclaim is an exercise in futility and should be denied.[4]

---

[4] Just because Forever 21 has brought a declaratory relief action on the grounds that the Diamond Marks are not distinctive and are not likely to cause confusion over source, sponsorship or association of the goods does not mean that a court has to entertain it. "Federal courts do not have a duty to grant declaratory judgment; therefore, it is within a court's discretion to dismiss an action for declaratory judgment." *Leadsinger*, 512 F.3d at 532. See also *Government Emples. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir 1988) ("The [Declaratory Judgment] Act 'gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.'")

## IV. CONCLUSION

Based on the above, Diamond respectfully requests that Forever 21 be precluded from bringing its counterclaim at this time. However, if Forever 21's motion is granted, Diamond requests the Court extend the discovery deadlines as well as all other dates in this action due to Forever 21's late and unexpected counterclaim seeking grand relief.

Dated: May 20, 2014         RITHOLZ LEVY SANDERS CHIDEKEL &
                            FIELDS LLP


                            By: _____\s\ David H. Boren_____
                                David H. Boren, Esq.
                                Gregory N. Weisman, Esq.
                                Attorneys for Plaintiff
                                DIAMOND SUPPLY COMPANY

# CERTIFICATE OF SERVICE

Pursuant to FRCP 5, I certify that I am a partner of RITHOLZ LEVY SANDERS CHIDEKEL & FIELDS LLP and that on the date shown below, I caused service of a true and correct copy of the attached: "**OPPOSITION BY PLAINTIFF DIAMOND SUPPLY COMPANY TO DEFENDANT FOREVER 21, INC.'S MOTION FOR LEAVE TO AMEND TO ADD A COUNTERCLAIM FOR CANCELLATION OF REGISTERED TRADEMARK AND FOR DECLARATORY RELIEF**" to be completed by:

_____         personally delivering

_____         delivery via Nationwide Legal Services

_____         sending via Federal Express or other overnight delivery service

_____         delivery via facsimile machine to fax no. _____

  X              delivery via electronic delivery only to:

        Scott P. Shaw
          Email – sshaw@calljensen.com
        Samuel G. Brooks
          Email – sbrooks@calljensen.com
        CALL & JENSEN
        A Professional Corporation
        610 Newport Center Drive, Suite 700
        Newport Beach, CA  92660
        Attorneys for Defendant FOREVER 21, INC

Executed on May 20, 2014, at Beverly Hills, California.

  X              (Federal)  I declare under penalty of perjury under the laws of the United States and the State of California that the above is true and correct.

                    \s\ David H. Boren