# EXHIBIT 1

David H. Boren, Esq. SBN 186316
    dboren@rlscf.com
Gregory N. Weisman, Esq., SBN 172248
    gweisman@rlscf.com
RITHOLZ LEVY SANDERS CHIDEKEL & FIELDS LLP
421 South Beverly Drive, 8th Floor
Beverly Hills, CA 90212
Bus: (310) 282-9449   Fax: (310) 282-2549

Attorneys for Plaintiff
DIAMOND SUPPLY COMPANY

Scott P. Shaw, Esq. SBN 223592
    sshaw@calljensen.com
Samuel G. Brooks, Esq., SBN 272107
    sbrooks@calljensen.com
CALL & JENSEN, a Professional Corporation
610 Newport Center Drive, Suite 700
Newport Beach, CA 92660
Bus: (949) 717-3000   Fax: (949) 717-3100

Attorneys for Defendant
FOREVER 21, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIAMOND SUPPLY COMPANY, a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>FOREVER 21, INC., a Delaware corporation and DOES 1-10 inclusive,<br><br>Defendants. | Case No.: CV13-06440 RSWL (JCx)<br><br>**JOINT SCHEDULING CONFERENCE REPORT [FED. R. CIV. P. 26(f)]**<br><br>Date: February 11, 2014<br>Time: 11:00 a.m.<br>Place: Courtroom of the Hon. Ronald S.W. Lew |

0011497

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

0011497

JOINT SCHEDULING CONFERENCE REPORT

Pursuant to Fed. R. Civ. P. 26(f) and this Court's Order Setting the Scheduling Conference in this matter, the parties, by and through their respective counsel, submit the following Joint Scheduling Conference Report as discussed during the conference held between the parties on December 10, 2013.

## A. Statement of the Case

### 1. Plaintiff's Position

Diamond is a clothing and skateboarding hardware company founded in 1998. Over the past 15 years, through shrewd promotion and extensive marketing, Diamond has become one of the most recognized brands in the streetwear and action sports fields for clothing, accessories and skate hardware gear.

Since at least as early as January 1, 1999, Diamond has used the DIAMOND SUPPLY CO. (words only) trademark (the "Diamond Name") and certain stylized logos to identify itself as the sole source of its goods. The most prolific of Diamond's stylized trademarks is the so-called "Brilliant" logo – which is a picture of a cut diamond (pictured below) oriented in side view (the "Brilliant Logo").

More recently, Diamond has introduced another stylized variant of its diamond logo (the so-called "Rock" logo) – which is also a picture of a cut diamond (pictured below) oriented in side view and in the same outline as the Brilliant Logo, but with fewer lines and, therefore, visual depth (the "Rock Logo"):

Diamond obtained a US registration for the DIAMOND SUPPLY CO. word mark on November 3, 2009 in International Class 25 (USPTO Reg. No. 3704642), memorializing a Date of First Use in Commerce of January 1, 1999. Diamond obtained a US registration for the Brilliant Logo on July 23, 2013 in International Class 25 (USPTO Reg. No. 4372413), memorializing a Date of First Use in Commerce of December 31, 1998. On November 14, 2011, Diamond filed a trademark application for registration of the Rock Logo (USPTO Serial No. 85472029), which application remains pending. Diamond has made use in commerce of such Rock Logo. The Diamond Name, Brilliant Logo and Rock Logo are sometimes herein collectively referred to as the "Diamond Marks."

In addition to being the owner of federal trademark registrations for the Diamond Name and the Brilliant Logo in International Class 25 (and others), the Diamond Marks have become very well-known over this time period and have been associated with Diamond by the consuming public since at least as early as January 1, 1999.

Diamond is currently one of the best selling and hottest brands in "streetwear" and is a top selling brand at numerous mall retailers, including PacSun and Zumiez, among others, and at times, the Number 1 selling brand. Diamond has worked tirelessly to advertise and promote the Diamond brand in connection with its apparel, footwear, and accessories bearing the Diamond Marks. Diamond has spent substantial sums on advertising, marketing and promoting the Diamond Marks, including high profile sponsorships with the world's biggest skateboarding athletes and the Rob Dyrdek launched "Street League" skateboarding events, which are

televised nationally and internationally. Nick Tershay, the CEO of Diamond, has approximately 654,000 followers on Facebook, 428,000 followers on Instagram and Diamond has grossed over $150,000,000 in sales in its young existence, much of it recently, as its fame and consumer awareness have escalated.

Due to Diamond's extensive and continuous efforts to advertise, market and promote the Diamond Marks, consumers recognize the Diamond Marks as singularly associated with Diamond as the sole source and indication of origin. Diamond has established goodwill and exclusive rights in and to the Diamond Marks.

As is very common with other hot brands or movements, Diamond recently discovered that Forever 21 has been infringing upon the Diamond Marks by using a diamond design deliberately selected to adorn Forever 21 garments in a manner likely to lead to confusion in the marketplace between Diamond and Forever 21. Diamond has listed numerous examples in its Complaint which represent just a few examples of Forever 21 garments with a diamond design or diamond device, some of which even co-opt the word DIAMOND, all unlawfully pirating off of the goodwill and consumer recognition of the Diamond Marks. Diamond has subsequently found more such infringing garments and will file a First Amended Complaint identifying these garments as well.

Forever 21's unauthorized use of a diamond design, diamond device and the word DIAMOND:

    a.    is likely to cause confusion, to cause mistake and/or to deceive customers and potential customers of the parties as between Diamond and Forever 21;

    b.    is likely to cause confusion, to cause mistake and/or to deceive customers and potential customers of the parties as to the origin, sponsorship or approval of Forever 21's goods, or as to some affiliation, connection or association between Forever 21's goods and Diamond;

      c.      unlawfully removes Diamond's ability to control the nature and quality of goods containing the Diamond Marks and placing the goodwill and reputation of Diamond in Forever 21's hands, over which Diamond has no control; and

      d.      unjustly enriches Forever 21.

Diamond has been damaged and continues to be damaged by Forever 21's unauthorized use of a diamond design, diamond device and the word DIAMOND on Forever 21's apparel and other goods and services which are sold and advertised for sale to the public (the "Forever 21 Conduct") which is confusingly similar to the Diamond Marks and should be restrained by this Court.

Diamond has sued Forever 21 for federal trademark infringement, federal unfair competition and false designation of origin, state trademark infringement and unfair competition, among other claims.

### 2. **Defendant's Position**

Anyone can obtain a trademark registration for a <u>common pre-existing symbol</u> if they provide evidence of proper "trademark use," but the registration does not grant a monopoly to prevent others from using those same pre-existing symbols in a non-trademark manner. Trademarks merely grant owners a limited property right to prevent others from using a trademark in a manner likely to cause consumer confusion as to the source of origin of the goods. For example, the peace symbol is a registered trademark for jewelry products, but that registration does not allow the trademark owners (one of them is Lucky Brand) the right to exclude others from using peace symbols decoratively and ornamentally on products. As Professor McCarthy, the leading trademark scholar has noted, visually attractive designs or pictures may be perceived as mere decorations, not as indications of origin. Additionally, as Professor McKenna has stated (and the Sixth Circuit has held), non-trademark use by a defendant is incapable of causing the type of consumer confusion

1 | contemplated under the Lanham Act, because there is no consumer over the source of
2 | origin. Finally, non-trademark artistic use by a defendant is protected fair use under
3 | the First Amendment, aesthetic functionality doctrine, and/or the merely ornamental
4 | rule.
5 |     Here, Plaintiff was not the first company to use the Diamond Marks. Those
6 | symbols pre-existed Plaintiff's adoption of the Diamond Marks as trademarks.
7 | Further, many third parties continue to use similar diamond symbols as decorative
8 | and ornamental designs on clothing, jewelry, and accessories. Consumers view these
9 | symbols as visually attractive and not as indicators of source of origin. Plaintiff has
10 | no evidence of actual confusion over the goods sold by Forever 21, in part, because
11 | Forever 21's trademark is affixed to the products and the diamond symbols on those
12 | products are merely ornamental. Additionally, some of the accused products sold by
13 | Forever 21 are actually protected by Copyright law, and Plaintiff's attempt to misuse
14 | its trademarks is preempted by the Copyright Act. Forever 21 has the right to use
15 | diamonds on apparel products in non-trademark ornamental and decorative manners,
16 | just like the hundreds (if not thousands) of other similar products. Plaintiff had no
17 | prior knowledge of Plaintiff or Plaintiff's narrow trademark rights, and Plaintiff has
18 | not suffered any damages as a result of the sales of products by Forever 21, or the
19 | hundreds of other similar products sold in the marketplace.

### B. Subject Matter Jurisdiction

The parties agree that the Court has subject matter jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b), 15 U.S.C. §§ 1114 and 1125(a), which relate to trademark infringement, false designation of origin and unfair competition.

### C. Legal Issues

The parties anticipate the following legal issues.

1. Whether Forever 21 has committed trademark infringement with respect to the Diamond Marks?

2. Whether Forever 21 has violated 15 U.S.C. § 1125(a) and Section 43(a) of the Lanham Act?

3. Whether Forever 21 has engaged in unfair competition?

4. Whether Forever 21's <u>non-trademark ornamental use of common pre-existing symbols is capable of causing consumer confusion as to source of origin of the goods?</u> If not, then whether Plaintiff's Complaint should be dismissed as a matter of law on summary judgment?

5. Whether the *Seabrook Foods* test should apply to determine whether Plaintiff's Diamond Marks are distinctive? The United States Patent & Trademark Office has recognized that the *Seabrook Foods* test is expressly designed for cases involving symbols and designs. It is meant to answer the question whether a **_symbol's_** intrinsic nature serves to identify a particular source, because if it does not perform the job of identification to distinguish it from other sources, then it is not protectable as a trademark unless the Plaintiff proves secondary meaning. The test was stated as follows by the Fifth Circuit: "In determining whether a design is arbitrary or distinctive this court has looked to [1] whether it was a "common" basic shape or design, [2] whether it was unique or unusual in a particular field, [3] whether it was a mere refinement of a commonly-adopted and well-known form of ornamentation for a particular class of goods viewed by the public as a dress or ornamentation for the goods, or [4] whether it was capable of creating a commercial impression distinct from the accompanying words." *Amazing Spaces, Inc. v. Metropolitan Mini Storage*, 608 F.3d 225, 243 (5th Cir. 2010) (holding that a five-pointed star symbol was not distinctive); *see also See DCNL Inc. v. Almar Sales Co.*,

1  1997 WL 913941 (N.D. Cal. Dec. 22, 1997) (holding that the design of a hair brush
2  was not inherently distinctive under the *Seabrook Foods* test).
3      6.   Whether the Rogers Test is applicable to artistic designs on clothing?
4  That test provides that the Lanham Act will "apply to artistic works only where the
5  public interest in avoiding consumer confusion outweighs the public interest in free
6  expression." *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 807 (9th Cir.
7  2003) (quoting *Rogers*, 875 F.2d at 999) (emphasis added by *Walking Mountain*).
8  Under that test, "[a]n artistic work's use of a trademark that otherwise would violate
9  the Lanham Act is not actionable 'unless the use of the mark has no artistic relevance
10 to the underlying work whatsoever, or, if it has some artistic relevance, unless it
11 explicitly misleads as to the source or the content of the work.'" *E.S.S. Entm't 2000,*
12 *Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008) (alterations
13 omitted) (quoting MCA Records, 296 F.3d at 902). The test traditionally applied to
14 uses of trademarks in titles of a work, but the Ninth Circuit has since extended it to
15 "apply to the use of a trademark in the body of the work." *Id.* Importantly, when the
16 *Rogers* test applies – as it does in this case – then no *Sleekcraft* analysis is undertaken
17 by the Court, because the First Amendment concerns override any rights that
18 otherwise may accrue under the Lanham Act. *See Rogers v. Grimaldi*, 875 F.2d 994,
19 999 (2d Cir. 1989) ("We believe that in general the [Lanham] Act should be
20 construed to apply to artistic works only where the public interest in avoiding
21 consumer confusion outweighs the public interest in free expression."), quoted
22 favorably in *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 901 (9th Cir. 2002).
23 Here, ornamental and decorative clothing designs are far more "artistic" than the
24 video game in *E.S.S. Entertainment*, and the non-trademark use of diamonds on
25 clothing clearly marked with the Forever 21 brand and sold exclusively by Forever 21
26 is not likely to mislead consumers as to the source of the goods.
27     7.   Whether the aesthetic functionality doctrine is a recognized defense to
28 trademark infringement in the Ninth Circuit, or whether the "merely ornamental" rule

should be applied in place of aesthetic functionality? Although the aesthetic functionality doctrine has been criticized by scholars, it is a valid defense in the Ninth Circuit. *See Pagliero v. Wallace China Co.*, 198 F.2d 339, 343 (9th Cir. 1952) (reasoning that where use of a design is important for the commercial success of the product rather than for purpose of source-identification, the mark is "functional" and not protectable as a trademark, but instead should be protected by copyright or patent law); *International Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 917 (9th Cir. 1980) ("[T]rademark law is concerned only with identification of the maker, sponsor, or endorser of the product so as to avoid confusing consumers. Trademark law does not prevent a person from copying so-called 'functional' features of a product which constitute the actual benefit that the consumer wishes to purchase, as distinguished from an assurance that a particular entity made, sponsored, or endorsed a product."); *Jay Franco & Sons, Inc., v. Franek.* 615 F.3d 855, 860-61 (7th Cir. 2010) (recognizing that "[f]ashion is a form of function. A design's aesthetic appeal can be as functional as its tangible characteristics. And many cases say that fashionable designs can be freely copied unless protected by patent law."). However, if the Court is not inclined to allow the aesthetic functionality defense, Defendant will rely on the "merely ornamental" rule articulated by Professor McCarthy. *See* McCarthy § 7:81 (reasoning that if the use is merely ornamental, then customer perception is not as a trademark so there is no "trademark" confusion).

        8.     Whether the Plaintiff is attempting to monopolize and misuse the Diamond Marks to encroach upon the Copyright laws? Some of Forever 21's products are legally protected as copyrighted works. In Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23 (2003), the Court rejected a Lanham Act claim for "unaccredited copying of a work" whose copyright had expired because such a claim would "cause the Lanham Act to conflict with the law of copyright, which addresses that subject specifically" by allowing the public to freely copy, without attribution, works whose copyrights have expired. *Id.* at 25, 33. The Court was "

0011497

8

'careful to caution against *misuse* or over-extension' of trademark...into areas traditionally occupied by patent or copyright." *Id.* at 34 (emphasis added) (quoting *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001); *see also Prestonettes v. Coty*, 264 U.S. 359 (1924) (holding that a trademark only gives the right to prohibit its use so far as to protect the owner's good will against the sales of another's product as his; it is not a copyright, and does not confer a right to prohibit the use of the word or words).

9. Whether Plaintiff is required to prove willfulness to recover Defendant's profits in a trademark case where the parties are not in competition? In the absence of competition between the parties, the Ninth Circuit requires a finding of willfulness to support a disgorgement of profits under 15 U.S.C. § 1117(a). *See Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1405-1406 (9th Cir. 1993) (requiring willfulness to disgorge profits based on unjust enrichment); *see also* McCarthy, § 30:62 ("To obtain an accounting of profits, the courts almost always require that defendant's infringement imply some connotation of "intent," or a knowing act denoting an intent, to infringe or reap the harvest of another's mark and advertising.") In *Blau v. YMI Jeanswear*, the District Court correctly summarized the law in the Ninth Circuit regarding profit disgorgement:

> Defendant's profits are recoverable (1) as a substitute measure of damages for Plaintiff's own damages when the parties are in direct competition and Defendants' sales are attributable to the infringing conduct or (2) when trademark infringement is willfully calculated to exploit the advantage of an established mark.

*Blau v. YMI Jeanswear, Inc.*, 2004 WL 5313967, *3 (C.D. Cal. 2004). Ninth Circuit law clearly requires that if the parties are not in competition, then Defendant's profits are only recoverable upon a showing of willfulness. *See* McCarthy, § 30:62 ("The Ninth Circuit has . . . [held] that willful infringement is necessary when plaintiff

1 seeks profits under the unjust enrichment theory but not when defendant's profits are
2 sought as a measure of plaintiff's damage.") The law in the Ninth Circuit is clear that
3 when the parties are in competition a plaintiff may recover the defendant's profits as
4 a measure of the plaintiff's damages.

### D. Damages

#### 1. Plaintiff's Position

Plaintiff will ascertain the amount of damages through discovery and through the use of experts. Plaintiff has filed this lawsuit seeking compensatory and enhanced damages, in an amount to be proven at trial, for trademark infringement, false designation of origin and unfair competition and state unfair competition. Plaintiff also seeks to enjoin and restrain Defendant's infringing conduct as set forth in its Complaint.

#### 2. Defendant's Position

There is no evidence of actual confusion. Plaintiff has no loss of sales and no injury. Further, actual damages are not ascertainable; actual damages would be purely speculative. Plaintiff and Forever 21 are not competitors, and Forever 21's actions were not willful. Therefore, Plaintiff is precluded from recovering Forever 21's profits as a matter of law.

### E. Insurance

#### 1. Plaintiff's Position

Plaintiff does not have insurance coverage for the claims it has filed against Defendant.

#### 2. Defendant's Position

Forever 21 does not have insurance to cover the claims in this lawsuit.

### F. Motions

Plaintiff will file a motion for leave (or seek a stipulation from Defendants) to file a first amended complaint to add additional parties and/or additional information which it has discovered indicating further infringement upon Diamond's Marks. Plaintiff will also file a motion for summary judgment and/or partial summary judgment at the appropriate time.

Defendant intends to file a motion for summary judgment.

The parties have also been negotiating a protective order that it hopes to lodge with the Court shortly in order for the parties to exchange confidential and proprietary information.

### G. Manuel for Complex Litigation

The parties agree that the case is not complex.

### H. Status of Discovery

Counsel for Defendant has shared some financial information (in summary form) with counsel for Plaintiff. The parties have agreed to make Initial Disclosures under Fed. R. Civ. P. 26(a)(1) on or before Friday December 20, 2013.

The parties have also agreed to preserve discoverable information.

### I. Discovery Plan

The parties agree that discovery should not be conducted in phases.

#### 1. Plaintiff's Discovery

Plaintiff anticipates the following discovery at this time but reserves the right to amend its discovery plan.

    a.    Plaintiff's Requests for Production of Documents, Interrogatories and Requests for Admission to Defendant.

    b. Depositions of witnesses employed by Forever 21 and deposition of Defendant's Rule 30(b)(6) witness(es)

    c. Third party document discovery and deposition subpoenas to Defendant's sources as they relate to infringing goods in this matter.

### 2. Defendant's Discovery

    a. Defendants' Requests for Production of Documents, Interrogatories and Requests for Admission to Defendant.

    b. Depositions of witnesses employed by Plaintiff and deposition of Plaintiff's' Rule 30(b)(6) witness(es)

    c. Depositions of any alleged consumers who claim to have been confused.

    d. Third party document discovery and deposition subpoenas to individuals and companies that designed, manufactured, and/or sold products with diamonds prior to and after the Plaintiff.

### J. Discovery Cut-Off

The parties propose a discovery cut-off date of September 22, 2014.

### K. Expert Discovery

Plaintiff reserves the right to retain an expert in this matter.

Defendants reserve the right to retain experts in this matter

### L. Dispositive Motions

Both parties intend to bring motions for summary judgment and/or partial summary judgment against the other party at the appropriate time.

0011497

12

JOINT SCHEDULING CONFERENCE REPORT [FRCP 26 (f)]

**M.  Settlement/ADR**

Plaintiff and Defendant are amenable to settlement. The parties hereby select ADR Procedure No. 3 pursuant to L.R. 16-15.4. The parties will exchange names of potential mediators for this matter within the next few weeks.

**N.  Trial Estimate**

The parties request that the Court set a trial date no earlier than January 26, 2015. The parties estimate that a jury trial will take about 5-6 days.

**O.  Trial Counsel**

David H. Boren of Ritholz Levy Sanders Chidekel & Fields LLP for Plaintiff. Mark Eisenhut and Scott Shaw of Call & Jenson for Defendant.

**P.  Independent Expert or Master**

The parties do not foresee that the Court will need to appoint a master pursuant to Rule 53.

**Q.  Timetable**

Please see "Schedule of Pretrial & Trial Dates Worksheet" attached hereto as Exhibit "A".

**R.   Other Issues**

The parties do not anticipate any other issues at this time.

Dated: January 13, 2014        RITHOLZ LEVY SANDERS CHIDEKEL &
                                              FIELDS LLP


By:_____\s\ David H. Boren_____
       David H. Boren, Esq.
       Attorneys for Plaintiff
       DIAMOND SUPPLY COMPANY

Dated: January 13, 2014        CALL & JENSON


By:_____\s\ Scott P. Shaw_____
       Scott P. Shaw, Esq.
       Samuel G. Brooks, Esq.
       Attorneys for Defendant
       FOREVER 21, INC.